UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Cr. No. 14-021-JJM-PAS |
|  | ) |  |
| DAVID ALCANTARA, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge

David Alcantara has petitioned this Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his judgment of conviction, entered after a jury found him guilty of conspiracy to commit bank fraud, conspiracy to pass counterfeit currency, and aggravated identity theft. He now claims that the Court should vacate his conviction because his trial counsel rendered ineffective assistance. The Court has determined that no hearing is necessary. The Court finds that Mr. Alcantara's Motion to Vacate (ECF No. 65) lacks merit and thus DISMISSES his petition.

## FACTS

A federal grand jury sitting in the District of Rhode Island indicted Mr. Alcantara on charges of conspiracy to commit bank fraud (Count 1), aggravated identity theft (Counts 2-3), and conspiracy to pass counterfeit obligations (Count 4). Mr. Alcantara was arrested and arraigned the next day. The grand jury subsequently returned a Superseding Indictment, including additional counts of aggravated identity theft.

After a five-day jury trial, the jury found Mr. Alcantara guilty of both conspiracy counts and all but one count of aggravated identity theft, which the Court dismissed on the Government's motion. The Court sentenced him to an aggregate term of sixty months imprisonment and three years supervised release.

Mr. Alcantara appealed his conviction, raising several evidentiary issues and an allegation of prosecutorial misconduct. The Court of Appeals for the First Circuit affirmed the conviction, finding each of Mr. Alcantara's claims to be meritless. Mr. Alcantara did not seek further review.

Mr. Alcantara timely filed this Motion to Vacate.

## LAW

### A. Section 2255

Section 2255 provides for post-conviction relief only if the court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 422 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In trying to collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474.

B.  *Strickland*

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

(1) that his counsel's performance fell below an objective standard of reasonableness; and

(2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88; *United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690). As for the second prong, or the prejudice requirement under *Strickland*, a "reasonable probability is one sufficient to undermine confidence in the outcome. In making the prejudice assessment, [the court] focus[es] on the

fundamental fairness of the proceeding." *Id.* (internal citation omitted). Unless the petitioner makes both showings, the court cannot say that the conviction resulted from a "breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D. P.R. 2000)("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Strickland* instructs, "[j]udcicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

ANALYSIS

As noted above, Mr. Alcantara filed the Motion to Vacate (ECF No. 65), the Government filed an opposition (ECF No. 67), and Mr. Alcantara filed a reply (ECF No. 69).

Mr. Alcantara alleges that trial counsel rendered ineffective assistance by failing to object to several instances of prejudicial testimony and to the admission of certain evidence, which led the jury to reach "improper inferences of guilt" against him. ECF No. 65 at 4. Specifically, he contends that counsel should have objected to the introduction of the following evidence:

1) a photograph of a Bentley automobile and references to the fact that Mr. Alcantara was known to drive luxury vehicles;

2) the fact that Mr. Alcantara wore a Yankees baseball cap;

3) two photographs of Mr. Alcantara's brother with allegedly counterfeit currency, as well as evidence of his brother's arrest in Connecticut for passing counterfeit bills;

4) opinion testimony from Secret Service Agent Mitchell about the allegedly counterfeit bills;

5) the fact that Mr. Alcantara was arrested at JFK airport in New York;

6) transcripts of surveillance recordings and testimony from Secret Service Agent Meletis about a meeting and phone calls between the agent and Mr. Alcantara in which they discussed the possibility of Mr. Alcantara buying false identification documents from the agent; and

7) a photograph of Mr. Alcantara standing by a table covered with allegedly counterfeit bills.

ECF No. 65-1 at 14.

5

Mr. Alcantara argues that "[t]rial counsel by failing to object to the introduction of the above mentioned statements and documents, permitted the Government to introduce prejudicial statements and evidence that if excluded, would have not only not inferred or misled the jury as to Alcantara's conscious[ness] of guilt, but would have permitted a more favorable standard of review on appeal." *Id.* at 15. He also asserts that "each of the errors ... was sufficiently prejudicial to require a reversal of his sentence," *id.* at 17, and, alternatively, that "the cumulative effect of these errors deprived him of fair and just assistance of counsel," *id.*

The Government opposes the Motion, arguing that

> On appeal, Alcantara previously claimed that these same pieces of evidence were unduly prejudicial and should not have been admitted. These arguments were all rejected by the Court of Appeals, which held that all of the contested evidence was properly admitted. As the evidence in question was all properly admitted, counsel could not possibly have provided ineffective assistance in failing to object to its admission.

ECF No. 67 at 1 (internal citation omitted). Thus, the Government concludes, the Court should summarily deny the Motion. *Id.*

Mr. Alcantara first contends that, in addition to the photo of the Bentley:

> [R]epeated references throughout the testimony to the luxury vehicles that Alcantara was known to drive on a regular basis, was prejudicial and not related to the charged offense. Further, the Government did not present any evidence that Alcantara purchased these vehicles with illicit funds or that the cars had any connection to the alleged crimes. Admission of this evidence was no more than a ploy by the government to elicit an emotional response from the jury by implying that Alcantara lived lavishly and enjoyed flaunting his alleged, wrongly procured or counterfeit wealth. Alcantara's vehicles were not an issue in the case and served no purpose other than to severely prejudice him.

ECF No. 65-1 at 15. Although couched as an ineffective assistance of counsel allegation in this Court, Mr. Alcantara raised this claim as an evidentiary issue on appeal. The First Circuit dismissed the claimed error:

> Contrary to Alcantara's contention, the cited testimony constituted probative evidence. Multiple witnesses testified that they knew Alcantara by his Bentley. Such testimony was admissible to establish the witnesses' knowledge of the defendant. Alcantara's response that "[i]dentity was not an issue in this case" is beside the point. Other witnesses, who were co-conspirators in Alcantara's criminal plots, testified that he drove a Lexus during the course of the conspiracy, including to meetings and bank branches. This testimony was admissible as "intrinsic to the crime[s] for which [Alcantara was] charged and [] on trial."

*United States v. Alcantara*, 837 F.3d 102, 107 (1st Cir. 2016)(alterations in original)(internal citations omitted). Mr. Alcantara alternatively argued to the appellate court that the danger of unfair prejudice outweighs any probative value of the evidence. *See id.* (citing Fed. R. Evid. 403). The court rejected that portion of Mr. Alcantara's argument as well, noting that "there was nothing particularly inflammatory about [the references]," *id.*, and concluding that "it is doubtful that the district court erred at all, and it certainly did not commit plain error, by declining to exclude this evidence *sua sponte.*" *Id.*

Similarly, Mr. Alcantara argues that the fact that the Government's "reference to the fact that Alcantara wore a Yankee's hat all the time was unrelated to the charged offense. The repetitive references to Alcantara's hat most probably contributed to the jury's negative view of him and his character." ECF No. 65-1 at 15. Mr. Alcantara also presented this allegation, and the Court of Appeals rejected it as an evidentiary claim on appeal.

7

> Alcantara's second claim of evidentiary error runs along similar lines. He argues that a handful of references to his wearing a New York Yankees baseball cap prejudiced the jury (which he assumes to have been composed of Boston Red Sox fans) against him. As an initial matter, all but two of the cited references occurred during defense counsel's cross-examination. In any event, this testimony, like the references to luxury vehicles discussed above, was relevant to the witnesses' knowledge of Alcantara and his appearance. Any possibility of unfair prejudice was ameliorated when the district court explicitly instructed the Rhode Island jury not to hold Alcantara's wearing of a Yankees hat against him.

*Alcantara*, 837 F.3d at 107.

Mr. Alcantara next challenges counsel's failure to object to evidence about his brother's illegal activities:

> [T]he failure to object to the introduction of his brother's illegal or improper activities caused the jury to speculate and reach an erroneous verdict against Alcantara. There was no objection to the introduction of two photographs of ... Alcantara's brother, Urias Alcantara, and a pile of currency including a so-called "bleeding bill." According to the government, the bleeding bill was supposedly evidence of that bill being counterfeit. An examination of this photograph reveals that it is almost impossible to see the "bleeding bill," rendering this photograph useless as it relates to relevance and incredibly prejudicial to Alcantar[a] as the first picture depicts Alcantara's *brother* smirking and smiling while holding some of the money.

ECF No. 65-1 at 15-16. As for this claim, posed as a challenge to the introduction of the evidence, the First Circuit stated:

> Alcantara next takes issue with the admission of certain evidence relating to illegal activity by his brother Urias. This argument proceeds from the erroneous assumption that the government failed to connect Alcantara to his brother's misconduct.
>
> The evidence in question consisted of (1) two photographs of Urias with counterfeit money and (2) testimony regarding Urias's arrest for passing counterfeit bills at the Farmington mall. With respect to the latter issue, the government introduced evidence that Alcantara, far from being merely present when his brother was arrested, was a central

> player in the criminal scheme. Alcantara drove to the mall with co-conspirators, distributed the counterfeit $100 bills to them, and attempted to warn the others when the police were approaching. Accordingly, testimony about the Farmington incident was not, as Alcantara contends, prior bad acts evidence subject to Federal Rule of Evidence 404(b). Rather, it constituted evidence "intrinsic" to the criminal conspiracy for which Alcantara was tried and convicted.
>
> A similar analysis applies to the photographs, which depict Urias next to a table covered in currency. The government introduced evidence that the bills in the photos were counterfeit. The photos were obtained from Alcantara's iPhone, along with a third image of Alcantara himself standing over a similar table of bills. The pictures were all taken within minutes of each other. In these circumstances, and in light of the previously discussed evidence that Alcantara and his brother both joined in a conspiracy to pass counterfeit bills, the photographs of Urias were admissible against Alcantara to prove that conspiracy.

*Alcantara*, 837 F.3d at 108 (footnotes and internal citation omitted).

The Court need not belabor the point. A clear pattern emerges. Every piece of evidence to which Mr. Alcantara argues counsel should have objected was deemed admissible by the Court of Appeals.[1] Mr. Alcantara is simply attempting to relitigate the circuit court's evidentiary rulings under the guise of ineffective assistance of counsel. This he cannot do. *See Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994)(noting that § 2255 is not a substitute for direct appeal).

---

[1] The same is true about lay opinion testimony from Secret Service Agent Mitchell; the arrest of Mr. Alcantara at JFK International Airport; transcripts of and testimony about meetings and phone calls between Mr. Alcantara and Secret Service Agent Meletis in which they discussed the possibility of Mr. Alcantara purchasing false identification documents from the agent, which Mr. Alcantara argues were unconnected to the charged crimes and so irrelevant and improper evidence; and a photograph of Mr. Alcantara standing next to a table covered in allegedly counterfeit bills. ECF No. 65-1 at 14; *see also Alcantara*, 837 F.3d at 108-10.

9

Mr. Alcantara argues that "[i]t was the failure to object to the improper statements that cause[s] the ineffectiveness allegation, not ... the evidence itself. The prejudice to Alcantara is the failure to object." ECF No. 69 at 4. Had counsel made the proper objections, Mr. Alcantara concludes, "there is a reasonable probability that the Court would have sustained the objections, prevented the unnecessary evidence from entering the trial and/or a more favorable standard on appellate review would have applied." *Id.* at 5-6. Mr. Alcantara's argument is problematic. Although Mr. Alcantara assails the Government's position that the Court would have overruled all of the objections as "merely speculation," *id.* at 5, Mr. Alcantara is speculating when he suggests, first, that the Court would have sustained some or all of the objections, *id.*, second, that the jury would have reached a different verdict absent the evidence in question, *id.*,[2] and third, that the First Circuit, using a "more favorable" standard of review, would have ruled in Alcantara's favor,[3] *id.* at 6.

---

[2] *See, e.g.*, ECF No. 65-1 at 15 ("[T]he failure to object to the introduction of his brother's illegal or improper activities caused the jury to speculate and reach an erroneous verdict against Alcantara."); *id.* at 16 ("The admission of evidence of Alcantara's questionably lavish lifestyle caused the jury to find him guilty based on improper evidence of his bad character ....").

[3] In fact, the Court of Appeals, using the "abuse of discretion" standard of review for two evidentiary issues Alcantara claimed—and the court assumed—had been preserved below, *Alcantara*, 837 F.3d at 109, found no error. As for the first, Alcantara's challenge to the testimony about his conversations with the undercover agent as "irrelevant and inadmissible," *id.*, the court of appeals stated: "Alcantara's communications with the agent were part and parcel of the charged conspiracy, and we accordingly perceive no error," *id.* at 110. As for the second, Alcantara contested the admission of the photograph of him standing over a table covered in currency as "irrelevant and unduly prejudicial." *Id.* The First Circuit found that "The evidence that the bills in the photograph were counterfeit dooms Alcantara's argument. At the risk of stating the obvious, a picture of the defendant with a pile of counterfeit bills is relevant to prove his involvement in a counterfeiting conspiracy." *Id.*

More basically, Mr. Alcantara discounts the fact that the First Circuit found every piece of evidence to which counsel supposedly should have objected to be admissible. If there was no error in the admission of the foregoing evidence, it necessarily follows that counsel was not ineffective for failing to object to its admission. *See Dure v. United States*, 127 F. Supp. 2d 276, 280 (D.R.I. 2001)(citing *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999))("Counsel cannot be deemed ineffective for failing to pursue futile arguments."); *see also United States v. Cabrera*, No. 99-1607, 2000 WL 227937, at *1 (1st Cir. Feb. 18, 2000) (unpublished table decision)(citing *Vieux*, 184 F.3d at 64)("Cabrera's first ineffective assistance of counsel claim fails because the substantive argument clearly would not have succeeded."); *Vieux*, 184 F.3d at 64 (noting that "failing to pursue a futile tactic does not amount to constitutional ineffectiveness"); *cf. Knight v. Spencer*, 447 F.3d 6, 16 (1st Cir. 2006)("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or nonexistent. Therefore, Knight's counsel was not ineffective when he failed to object to the admission of the prior consistent statements.")(internal citations omitted).

Mr. Alcantara also argues that "although each piece of evidence individually may not have risen to a denial of due process, the cumulative impact of this evidence, assessed in the aggregate, inflamed the jury's passions and resulted in the denial of Mr. Alcantara's right to a fair trial under the Fifth Amendment based on the admission of this highly prejudicial evidence." ECF No. 65-1 at 16; *see also id.* at 17

11

("[T]he cumulative effect of these errors deprived him of fair and just assistance of counsel."). The First Circuit found no error in admission of any of the challenged pieces of evidence. This Court has found that counsel was not ineffective for failing to object to the admission of the evidence. It makes sense that if the Court erroneously admitted no individual piece of evidence, there can be no cumulative prejudicial effect. Thus, Mr. Alcantara's argument about the aggregate impact of the evidence's admission (and counsel's failure to object) has essentially been rendered moot.

Mr. Alcantara has not shown that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The Court therefore does not address *Strickland*'s prejudice prong. *See Knight v. Spencer*, 447 F.3d at 15 ("Knight has not made a showing regarding the first prong with respect to any of his four ineffective assistance claims, so we do not reach the second prong of the analysis."); *see also Strickland*, 466 U.S. at 697.

## CONCLUSION

Mr. Alcantara's claims lack merit. The Court therefore DENIES David Alcantara's Motion to Vacate his conviction (ECF No. 65) under 28 U.S.C. § 2255.

## RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is <u>not</u> appropriate for issuing a certificate of appealability, because Mr. Alcantara has failed

("[T]he cumulative effect of these errors deprived him of fair and just assistance of counsel."). The First Circuit found no error in admission of any of the challenged pieces of evidence. This Court has found that counsel was not ineffective for failing to object to the admission of the evidence. It makes sense that if the Court erroneously admitted no individual piece of evidence, there can be no cumulative prejudicial effect. Thus, Mr. Alcantara's argument about the aggregate impact of the evidence's admission (and counsel's failure to object) has essentially been rendered moot.

Mr. Alcantara has not shown that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The Court therefore does not address *Strickland*'s prejudice prong. *See Knight v. Spencer*, 447 F.3d at 15 ("Knight has not made a showing regarding the first prong with respect to any of his four ineffective assistance claims, so we do not reach the second prong of the analysis."); *see also Strickland*, 466 U.S. at 697.

## CONCLUSION

Mr. Alcantara's claims lack merit. The Court therefore DENIES David Alcantara's Motion to Vacate his conviction (ECF No. 65) under 28 U.S.C. § 2255.

## RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is <u>not</u> appropriate for issuing a certificate of appealability, because Mr. Alcantara has failed

to make a substantial showing of the denial of a constitutional right on any claim, as required by 28 U.S.C. § 2253(c)(2).

Mr. Alcantara is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal here. *See* § 2255 Rule 11(a).

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

Date: October 22, 2018